IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. ANDRE ROBERTS, Defendant. | Case No. CR10-0116 REPORT AND RECOMMENDATION |

On the 18th day of April 2011, this matter came on for hearing on the Motion to Suppress (docket number 16) filed by the Defendant on March 28, 2011. The Government was represented by Special Assistant United States Attorney Daniel Aaron Chatham. The Defendant appeared personally and was represented by his attorney, Mark C. Meyer.

## I. PROCEDURAL HISTORY

On November 2, 2010, Defendant Andre Roberts was charged by Indictment with one count of being a felon and illegal drug user in possession of a firearm. Defendant entered a plea of not guilty, and trial was scheduled for April 25, 2011.

On March 28, Defendant timely filed the instant motion to suppress. Two days later, on March 30, Defendant filed notice of his intent to enter a conditional guilty plea. Hearing on the motion to suppress and Defendant's conditional guilty plea were both set for April 7, 2011. At the Government's request, however, hearing on the motion to suppress was later rescheduled for April 18.

On April 7 at 2:30 p.m., as previously scheduled, Defendant appeared and entered a conditional plea of guilty to the indictment. The parties did not enter into a plea agreement, but the Government agreed to a conditional plea, with Defendant reserving his right to challenge any adverse decision on his motion to suppress. Following the plea

1

change hearing, at approximately 4:13 p.m. on April 7, Defendant filed a motion to amend his motion to suppress. The proposed amendment added an issue which was not raised in the initial motion to suppress. The Court granted the motion to amend on April 11, but noted that "[t]he government may, within 7 days after the filing of this order, file a motion for reconsideration of the order." On April 15, the Government filed a motion to reconsider, asserting that Defendant's conditional plea of guilty preserved only those issues raised in the initial motion to suppress.

At the instant hearing, it was agreed that the factual basis for the new issue raised in Defendant's amended motion to suppress was in error. That is, Defendant's second issue is premised on the belief that there was no warrant outstanding for his arrest at the time of the incident giving rise to the instant charge. That belief was in error. Defendant conceded at the instant hearing that there was, in fact, a warrant outstanding for his arrest at that time. Accordingly, Defendant agreed to withdraw his amended motion to suppress, and proceed to hearing on the sole issue raised in the initial motion to suppress. The Government's motion to reconsider then became moot.

## II. ISSUE PRESENTED

Defendant was a passenger in a vehicle which was stopped for failing to have its rear license plate illuminated. Defendant argues that the stop was unconstitutionally prolonged.

## III. RELEVANT FACTS

On August 7, 2009 at approximately 10:20 p.m., Officer Dillon Boenish, of the Cedar Rapids Police Department, was on routine patrol heading north on 1st Avenue. As a vehicle passed in the opposite direction, Boenish looked out his side window and noticed that the rear license plate light was not illuminated. Boenish then made a u-turn and

2

followed the vehicle as it turned east on 29th Street and then pulled into a Walgreen's parking lot.[1]

Just as Officer Boenish exited his patrol car and started walking toward the subject vehicle, the rear door on the driver's side started to open. Boenish said "hey, shut the door," and the occupant (who turned out to be Defendant) complied. Boenish then walked up to the passenger side of the vehicle and looked inside. Boenish testified that he went to the passenger side first, because the opening of the door on the left-hand side was an "indicator" of a possible problem. According to Boenish, "the fact that the door had popped open so quickly, my guard was heightened." Looking inside the vehicle, Boenish observed four adult occupants.

After looking inside the vehicle, and less than a minute into the stop, Officer Boenish walked behind the vehicle and called the license plate number into dispatch. At approximately 1 minute and 18 seconds into the stop, Boenish walked to the driver's side of the vehicle and talked to the driver. According to Boenish, he advised the driver of the reason for the stop. The driver admitted that the license plate light had been out for six years, but said that she "had been meaning to fix it." In fact, she retrieved from the glove box a light bulb which was ostensibly for that purpose. At Boenish's request, the driver and three occupants verbally identified themselves and then provided Boenish with their identification cards. A video of the incident shows Boenish writing on a notepad.[2] Boenish testified that he was writing down the occupants' names, and was *not* filling out a citation or warning ticket.

---

[1] It is not clear to the Court whether the vehicle stopped in response to Officer Boenish, or simply pulled into the parking lot and stopped, when Boenish pulled in behind it. Neither party raises the issue, however, and under the circumstances of this case, it does not appear to be legally significant.

[2] A DVD of the incident was introduced at the hearing as Government's Exhibit 1. The video portion of the recording started 1 minute prior to Officer Boenish turning on his "top lights." The audio portion of the recording starts when the top lights are activated. In this case, the audio recorded the inside of the patrol car and two channels of radio. The system apparently has the capacity to record the conversation between the officer and the subjects, but it was not employed in this case.

3

At almost precisely 3 minutes into the stop, Officer Boenish was walking back to his squad car with the occupants' identification cards. Approximately 20 seconds later, Boenish radioed dispatch that he was "Code 4," meaning that he did not require any assistance. Typing can be heard on the audio recording, and Boenish confirmed that he was typing the occupants' identification information into his in-car computer to check for warrants.

At approximately 4 minutes and 40 seconds into the stop, Boenish can be heard asking dispatch "can I get an extra unit? I've got a 10-99." Boenish explained at the hearing that a 10-99 is a wanted person. Boenish can then be heard typing the information for the remaining occupants into his computer. Approximately 6 minutes into the stop, Officer Boenish called dispatch to confirm the warrant – asking for a "10-29," which is a warrant check. Boenish provided dispatch with Defendant's name and date of birth from the Illinois identification card provided by Defendant.

At approximately 7½ minutes into the stop, Officer Boenish radioed the other officer responding to the scene that she could "disregard" – meaning that he no longer needed her assistance. Boenish testified that he was mistakenly looking at a different person's arrest warrant and it appeared that it was not "extradictable." Accordingly, at that time, Boenish was no longer intending to take Defendant into custody. At the hearing, however, Boenish explained that he was looking "at the wrong warrant" and, in fact, the warrant for Defendant was valid.

Approximately 8½ minutes into the stop, dispatch confirmed that there was a warrant for Andre Roberts' arrest, providing a physical description and date of birth. Dispatch advised Boenish that Defendant's date of birth was May 28, 1981, while the date of birth shown on Defendant's identification card was May 28, 1982. According to Boenish, however, his computer provided multiple names and multiple dates of birth for Defendant.

4

At approximately 9 minutes into the stop, Officer Boenish exited his patrol car and walked up to the vehicle. Boenish opened the door, told Defendant that there was a warrant for his arrest, and asked him to step out of the vehicle. Immediately upon exiting the vehicle, Defendant attempted to flee. He was caught, however, after a short foot pursuit. Defendant was allegedly in possession of marijuana and a 9mm handgun.

## IV. DISCUSSION

Defendant does not contest the validity of the initial stop. Defendant argues, however, that he "was illegally detained after the basis for investigating the original traffic stop had concluded."[3] According to Defendant, "the basis for this stop concluded when the driver explained that she knew the light was out and reached into the glove box and showed the officer a light she intended to use to repair the light."[4] The Government argues, on the other hand, that "[t]he officer had not issued a citation or a warning, and the stop was not complete at the time the officer learned defendant had an outstanding warrant."[5]

"A lawful traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete' the mission of the stop." *United States v. Hernandez-Mendoza*, 600 F.3d 971, 975 (8th Cir. 2010) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Here, Defendant concedes that the vehicle was lawfully stopped. Accordingly, the Court must determine if the encounter was "prolonged beyond the time reasonably required to complete the mission of the stop."

After briefly approaching the passenger side of the vehicle for security reasons, Officer Boenish then called the license plate number into dispatch. Just over one minute into the stop, Boenish approached the driver and advised her of the reason for the stop.

---

[3] *See* Defendant's Brief (docket number 16-1) at 3.

[4] *See* Motion to Suppress (docket number 16) at 1.

[5] *See* Government's Brief (docket number 31-1) at 2.

5

After admitting that she knew the license plate light had been out for *six years*, the driver retrieved a new light bulb which she ostensibly meant to use as a replacement. Defendant argues that Boenish was then constitutionally required to walk away, apparently without obtaining any further information from the driver or the occupants, and without issuing any citation or warning. The Court disagrees.

"During a traffic stop, an officer may detain the occupants of the vehicle while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation." *United States v. Suitt*, 569 F.3d 867, 870 (8th Cir. 2009) (quoting *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008)). "A reasonable investigation includes asking for the driver's license, the vehicle's registration, as well as inquiring about the occupants' destination, route, and purpose." *Id.* at 870-71 (quoting *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005)). An officer has the authority to ask the passengers similar questions. *United States v. Coney*, 456 F.3d 850, 857 (8th Cir. 2006) (rejecting the defendant's argument that the officer "unlawfully expanded the scope of the traffic stop by asking [the passengers] questions instead of simply writing [the driver] a warning for speeding"). *See also Arizona v. Johnson*, 555 U.S. 323, 129 S. Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

Here, Officer Boenish was not required to abandon his investigation simply because the driver produced a light bulb which she claimed she intended to use to replace a light which had been out for *six years*. Prior to deciding whether to issue a citation or a warning, Boenish was free to ascertain the identity of the driver and the occupants. During that process – just 4 minutes and 40 seconds into the stop – Boenish determined that a warrant was outstanding for Defendant's arrest. At that point, there was probable

cause to take Defendant into custody, and it cannot reasonably be argued that further delay was unjustified.

This case is remarkably similar to *United States v. Cloud*, 594 F.3d 1042 (8th Cir. 2010). There, a sheriff's deputy made a routine traffic stop and asked the three occupants for identification. The name given by the defendant (which turned out to be false) came back "not on file." Defendant was then asked to step out of the car so that the officer could double-check the information. Ten minutes into the stop, dispatch advised the officer that there were two outstanding arrest warrants for the name given by the defendant. In support of his motion to suppress, the defendant argued that "the stop became an unconstitutional seizure when the identification information Cloud gave [the officer] came back 'not on file.'" *Id.* at 1045. The Eighth Circuit Court of Appeals rejected the argument:

> After a lawful traffic stop, an officer may complete routine tasks, which may include asking a passenger for identification and running a computer check if the passenger consents to the request for identification. "A request to see identification is not a seizure, 'as long as the police do not convey a message that compliance with their request is required.'" Cloud points to nothing in the record suggesting that he was compelled to give [the officer] his name and date of birth. Likewise, [the officer] did not violate Cloud's constitutional rights by asking him to step out of the car. As for the length of the stop, a lawful detention may be prolonged for a reasonable time without violating the Fourth Amendment if complications arise while checking identification – such as Cloud's alias being reported as "not on file." And the record in this case shows that just as [the officer] was double-checking the information that Cloud had given him, only ten minutes into the stop, dispatch called back with the information that [the first name given by defendant] had outstanding warrants, giving [the officer] the necessary probable cause to seize Cloud. In these circumstances, ten minutes is not an unreasonably long traffic stop.

*Id.* at 1044-45 (internal citations omitted).

In summary, I believe Defendant's motion is wholly without merit. Defendant concedes that the vehicle was lawfully stopped. While completing the "routine but somewhat time-consuming tasks related to the traffic violation," Officer Boenish discovered that a warrant was outstanding for Defendant's arrest. Defendant was then arrested, despite his effort to flee. I cannot find any constitutional violation here.

## V. RECOMMENDATION

For the reasons set forth above, I respectfully recommended that the Motion to Suppress (docket number 16) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 18, 2011.*

DATED this 19th day of April, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA